which is 19-55343 Rx, LLC v. Nutrisearch Corporation and Lyle McWilliam. Mr. Gott, you may proceed. Good morning, Your Honor. Greetings from Minneapolis. My name is Eric Gott with Total Law PC on behalf of Rx, LLC. I'd like to reserve five minutes of my time.  The central question we're asking you to decide today is whether those who represent themselves as unbiased, neutral experts presenting chronic ratings by mathematically determined objective formulas can be held liable under the Lanham Act by rigging the game in favor of one company and against its rivals in exchange for a substantial amount of money. Do you allege that the defendant here is an agent of USANA? Your Honor, I don't believe we specifically allege that it is an agent of USANA, but certainly the allegations would support such a conclusion. If we conclude that the allegations in their current form are inadequate, would you seek leave to amend to assert an agency theory? Yes, Your Honor. I believe that we do have the facts and even some of the allegations already support an agency theory, essentially a conspiracy between USANA and the appellees here. Why didn't you assume USANA in this case? Well, Your Honor, the defendants are the ones that were responsible, and for various reasons, the client wanted us to recover from that. So what happened here, RX is a direct marketing dietary supplement company. USANA is its chief rival. The guide is one of the central ways that USANA promotes its products. Essentially, the way that it works is that NutraSearch and McWilliam use the guide to describe all of the competition out there, and then announce that on some purportedly objective basis, USANA's products are the best. And at the same time, they fail to disclose that they have financial ties to USANA. Not only that, they expressly state that they don't have ties to any of the products. So there are... But there's a case law saying that merely not disclosing conflict of interest doesn't turn something into commercial speech. How is this case different from those type of cases? Well, what's different here, Your Honor, is they go out of their way to explain that their reviews are unbiased mathematical formulas where you plug in the numbers based on the data from the supplements, and a number of raw score pops out, and then they rank all of the different products according to that formula. They go out of their way to say that they're objective and unbiased, they're experts, and this is all about the science. So what's really important here is think about it from the end consumer's perspective. Who are you... If an expert comes out and there's this... There's all this science, you came up with this formula, here are these ratings, that's pretty powerful. That's a lot more powerful than simply a consumer review that doesn't disclose they got paid by the company to give a positive rating on a product. So the district court answered the question that I argue that's correct, but how it got there is itself an error because it decided the question on rule 12b6 motion to reach the result. In order to do so, it ignored key allegations of the complaint, construed other allegations, and made inferences like most favorable McWilliam NutriSearch, engaged in speculation. How far does your theory go? I we have a television station that has a movie critic, and the movie critic gives rave reviews to one studio's pictures and doesn't disclose that the studio owns the television station or the network. Is that... Now we're going to consider the movie review to be commercial speech and a Lanham Act violation? Not necessarily, Your Honor, but that situation is a little bit different than what we have here, and I think in a material way. The movie critic is giving subjective opinions about things and making no qualms about the fact that these are just opinions. Here we've got somebody who's saying they're an expert, that she's using mathematical formulas to reach ratings, and consumers are relying on those ratings. What they don't know isn't just that the expert has ties to one of the companies that's rated, but what they also don't know is that the formulas are tweaked in order to reach that result. They don't know that the expert, the supposed unbiased expert, is doing whatever it can to make sure that the ratings are met. I know you said you wanted to save five minutes for rebuttal. You have four minutes remaining. Do you want to save that for rebuttal? I'll go for just another minute, Your Honor. So a few things I wanted to point out. The appellate has talked about an indirect financial interest, but that's not what the complaint says. I'd point to excerpt of record 46 through 48. These are allegations of the amount of complaint, 21, 23, and 24 through 26. And these specifically talk about what the deal was between NutraSearch and USAT. It was an explicit quid pro quo. And the district court in its initial opinion talked about how our first complaint, our original complaint, didn't allege and express quid pro quo. Well, in our amended complaint, we did that. We provided more facts that specifically showed exactly what the deal was. And those allegations, 21, 23, and 24 through 26, show that. And I'll reserve the rest of my time for rebuttal. Thank you. All right, Mr. Christensen, we'll hear from next. Thank you. May it please the court. My name is Eric Christensen, and I represent Mr. Lyle McWilliams and NutraSearch Corporation. We believe the district court's dismissal with prejudice should be affirmed. This case rises or falls, we believe, on application of the Bolger versus Young test and alternatively on the Riley case as well. NutraSearch publishes a 160-page comparative guide to nutritional supplements, and that is not commercial speech. It is protected by the First Amendment. The guide proposes no commercial transaction. No products are offered for sale in the guide. No statements are made about buying one product or another. There are no links to any manufacturer's website. There are no websites. Suppose we had a more extreme case that's closer to the recent FTC case that's referenced in the briefs, where what the guide were alleged to have done was to basically sell the slots at a fixed price, that you pay this amount and you'll get slot one. You're going to get rating number one, or you'll get a rating that's lower than number three. Here's the price to buy that rating. Why isn't that, if that were the case, wouldn't that be basically the selling of advertising and commercial speech? It's a good question. I haven't thought about. I've been looking at this from the 160-page guide that talks about the science of understanding nutrition, and it only has 26 pages that provide ratings of supplements. The plaintiff here, Rx, is a single line on one page, on page 131, where it's given a five-star rating. Can you answer my question? Is the selling of specific slots, is that the selling of advertising and commercial speech? It very well might be. I don't know. I'd have to think about that. They allege that that's close to what you've done here, so tell me why that's wrong. It's wrong because the speech that's at issue is the entire guide. What they're trying to do is to take a single line in a 160-page guide and pull it out of the context that's when it's in. The case law is very clear, and the Riley case by the U.S. Supreme Court is very clear, that even in a situation where you could argue that one line based on that theory would perhaps under their theory be commercial speech, it doesn't turn the entire guide into an actionable item. The Riley case in the U.S. Supreme Court says that when commercial speech and non-commercial speech are inextricably intertwined, as they are here, then the commercial speech is treated as non-commercial speech for purposes of Lanham Act liability. The speech here is inextricably intertwined. There is no way to cherry pick a single line out of a 160-page guide and say that makes the entire guide commercial speech. You have to look at the guide as a whole. The guide as a whole here is a ratings guide that explains the author's opinions and understanding of the science that's at issue with nutritional supplements. So, I hope that answers your question. Well, why can't it be that there's an ad in a book that otherwise is protected speech? Well, there is. The DECCS case, Your Honor, involved exactly that. It involved a form of the yellow pages that was being offered. And in that case, it was clear that the DECCS directory had ads in the form of yellow pages that were purchased. And it also had non-commercial speech in the form of information about public services and police departments and white pages and all that. So, following the Riley case from the U.S. Supreme Court, the court in the DECCS case said, you have to treat the whole guide as protected because the commercial speech and the non-commercial speech in that DECCS directory were inextricably intertwined. It could not be separated. And so, the First Amendment protected the entire document, even when there were ads in that document. But are they really inextricably entwined here? I mean, think of, say, U.S. News & World Report's college guide and say, Yale University gives U.S. News & World Report money to have it rank number one. And if you look at those guides, there's 100 pages of articles about schools, how to pay for school, blah, blah, blah. But let's face it, people look at it just for the rankings. So, in that case, would you say that the entire U.S. News & World Report college guide, the articles and the rankings are inextricably intertwined? I would. And I think that the danger here of finding to the contrary is that if you allow plaintiffs to plead around the Consumer Reports product review exception with any allegation of financial interest or bias, you're going to eviscerate the exception, right? Because then you're going to open the door here for anybody to say, well, in this particular case, the author, when they reviewed X, had a financial interest or motive or some kind of bias, and that will do away entirely with the Consumer Reports Consumer Review exception, which is well-established in the jurisprudence. And so, again, I think it comes back to the Riley case, where there is a publication that is predominantly non-commercial speech, even if it contains some small modicum of arguably commercial speech, it still is entitled as a whole to First Amendment protection. And I think to hold otherwise would be to eviscerate the Consumer Reports product review exception by any allegation of any type of bias, economic or otherwise. In the guide, say the fifth edition, how many products received the top rating? I don't mean the star ratings, but these medals. How many products received that top rating? In the fifth edition, on page 82, there were two companies that received the five gold stars, Douglas Laboratories and USANA Health Sciences. And how about for the sixth edition? In the sixth edition, on page 1, 14, and 15, there were two companies that received the platinum award. USANA received a platinum plus, and Blueberry Health Sciences received a platinum. And are these in the record? I couldn't find the actual guides in the record. I don't believe that the guides are in the record. In fact, one of the things that I wanted to point out in my argument here today was the First Amendment Complaint says almost nothing about the guide. If you look at the allegations, the allegations really are trying to allege some kind of bias on the part of my client, Mr. McWilliam. And the reason there's almost no mention of the guide is because the guide is entirely non-commercial speech in terms of, you know, over 100 pages of the Science of Nutrition. And only 26 pages of the guide even rank products, and they rank 1,600 different products in Canada, Mexico, and the United States. And so I think the absence of the guide being in the record here is telling. It's telling in the sense that this case isn't really about the guide. This case is about some beef that Eric's has with USANA and or Mr. McWilliams on some kind of personal basis. But the law has this court look at the guide itself, and the guide here is clearly not commercial speech based on the fact that it is, as it says itself, the guide is produced for educational and comparative purposes only. It analyzes the science on nutrition and gives the author's opinions on 1,600 products based on his understanding and opinions about the literature that's out there. It has a lengthy bibliography at the end that sets forth all the sources that the author reviewed in order to reach his conclusions. And so I think that that's pretty telling that it's not in the record. The statement that the author and NutriSearch Corporation is not associated with any manufacturer or product represented in this guide, at least on the allegations in the First Amendment Complaint, that clearly seems to be false or adequately ceded to be false. I think it's irrelevant, and I think it's irrelevant for the reasons we set forth in our brief. I think it has no statement whatsoever about a product. It's not tied to any product. It doesn't meet any of the criteria set forth in the Bolger case. It's not an advertisement. It's not referencing a specific product. So it has really nothing to do with whether or not the guide as a whole is or is not non-commercial speech. All right. Thank you. Counselor, your time has expired. We'll hear a rebuttal argument now from Mr. Gott. Thank you. I think you're on mute. Yes. We can't hear you. Hold on. All right. Try again. Can you hear me now? Yes, we can. All right. Okay, great. All right. So the opposing counsel mentioned a lot about the guide, about the number of pages, the specific stuff in specific pages, and none of that's in the complaint. This is, again, a decision on the motion under Rule 12b-6. So what controls is the complaint. They could make those arguments later at summary judgment or trial if the applicant supports them, but it's not appropriate here. Now, the reason why the minute complaint doesn't go in detail into the guide is because we're not attacking the guide itself. There's no problem with Mr. McWilliam or NutriSearch publishing a guide that provides scientific information. And what's different about a Lanham Act case from cases like Dex is the Lanham Act is with, it acts with precision. It's about the false statements. It's not, if we were to get a judgment in this case, it wouldn't be to take all these books, put them in a pile and burn them, or prohibit people from having them. It would simply be to recover damages for the false statements. So that doesn't restrain Mr. McWilliam's or NutriSearch's speech or non-commercial truthful speech at all. Well, there is a benefit for injunctive relief in the complaint, isn't there? There is, Your Honor, but our injunctive relief would be narrowly to relate to the false statements that Mr. McWilliam and NutriSearch have made. I can understand why the disclosure statement, according, if you accept the allegation of the complaint, is false. But with respect to the ratings, why aren't they opinions? Again, I know you say that there's a lot of the guide purports itself to have scientific basis, but a lot of again, going back to U.S. News and World Report, they claim to use these objective metrics, acceptance rates, test scores, et cetera. But I think people realize that in many ways it's still an opinion. If U.S. News and World Report says College X is the number one school or number two school, I think people accept it as informed opinion, but there is some value judgment in considering what criteria to take into account in giving a rating. So here, why is the five-star ratings, why aren't they, that's still essentially opinion, maybe informed opinion, but still opinion? Your Honor, so allegations, paragraphs 70 to 72 in the amended complaint discuss, summarize the false and misleading statements and then explains why they're false or misleading. But more broadly than that, this isn't just about the fact that there are ratings and that they could be opinion, it's about the fact that Mr. McWilliam was changing the formulas and doing all sorts of things, putting stuff on the scale to make sure that USANA was always on top. So it's not just a matter of opinion and, in fact, courts have held that just because something's an opinion doesn't mean that it's not actionable when there are false representations as part of that. All right, your time has expired. The case just argued will be submitted. I want to thank counsel both for your presentations, especially under these unusual circumstances. Much appreciated. Thank you. Thank you.
judges: Presnell, Collins, Lee